IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE:<br><br>HEIGHTS MELROSE GROUP, LLC,<br>Debtor | §<br>§<br>§<br>§<br>§ | CASE NO. 11-33380-H1-11<br><br>CHAPTER 11 |
| HEIGHTS MELROSE GROUP, LLC,<br><br>VS.<br><br>ICITY CONDO, INC. and ISAAC W. KYLE<br><br>VS.<br><br>THOMAS F. NOONS, JACKY NOONS, HEIGHTS VENTURE, LTD. and BRITISH AMERICAN PROPERTIES OF TEXAS, INC. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | ADVERSARY NO. 11-3184<br><br>CIVIL ACTION NO. H-11-3531 |

**DEFENDANTS, ICITY CONDO, INC. AND ISAAC W. KYLE'S, OBJECTIONS TO REPORT AND RECOMMENDATION**

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| A. | BACKGROUND | 5 |
| B. | SUMMARY JUDGMENT EVIDENCE | 6 |
| C. | SUMMARY JUDGMENT STANDARD | 7 |
| D. | ANALYSIS | 8 |
| | Standing | 8 |
| | Notice | 14 |
| | Substitute Trustee Authority | 15 |
| E. | LEGAL FEES AND COSTS | 19 |

## TABLE OF AUTHORITIES

**RULES AND STATUTES** **Page**

TEX.. BUS. ORG. CODE, § 152.002 .......... 12

TEX. PROP. CODE, § 5.021 .......... 14

TEX. PROP. CODE, § 51.005 .......... 10

TEX. PROP. CODE, § 51.0075 .......... 19

TEX. PROP. CODE., § 82.051 .......... 10

TEX. PROP. CODE, § 82.060 .......... 14

**CASES** **Page**

*A&M Operating Co., Inc. v. Southcoast Supply Co., Inc.*
182 BR 997 (E.D. Tex. 1995) .......... 14

*Ackly v. FDIC*
981 F.Supp. 457, 461 (S.D. Tex. 1997) .......... 19

*Benser v. G.E. Capital Mort. Servs, Inc.*
1994 WL 156245, at 4 (Tex.App. – Dallas, April 25, 1994, writ den'd) .......... 17

*Bernal-Bell v. Saxon Mort. Servs, Inc.*
2010 WL 3250115, at 3 (Tex.App. – San Antonio, August 18, 2010, no pet.) .......... 17

*Diversified, Inc. v. Walker*
702 S.W.2d 717 (Tex.App. – Houston [1st Dist.] 1985, writ ref'd n.r.e) .......... 18

*First Nat'l Bank in Dallas v. Whirpool Corp.*
517 S.W.2d 262, 266 (Tex. 1975) .......... 13

*Goswami v. Metro Savings & Loan Ass'n*
751 S.W.2d 47, 49 (Tex. 1988) .......... 9

*Henke v. First Southern Properties, Inc.,*
586 S.W.2d 617, 210 (Tex.Civ.App. – Waco 1979, writ ref'd n.r.e.) .......... 18

*Martin v. Cadle Co.*
133 S.W.3d 897 (Tex.App .– Dallas 2004, pet. denied)........................................ 13

*Mercantile Nat'l Bank v. Bradford Trust Co.*
850 F.2d 215, 218 (5th Cir. 1988)........................................................................ 19

*Reynolds v. Allstate Ins. Co.*
629 F.2d 1111 (5th Cir. 1980).............................................................................. 9

*Slaughter v. Qualls*
162 S.W.2d 671, 675 (Tex. 1942)........................................................................ 9

*Univ. Savings Ass'n v. Spring Woods Shopping Center*
644 S.W.2d 705, 706 (Tex. 1982)........................................................................ 18

*Westland Oil Dev. v. Gulf Oil Corp.*
637 S.W.2d 903, 908 (Tex. 1982)........................................................................ 13

*Wilson v. Armstrong*
236 S.W.2d 55, 757 (Tex.Civ.App. – Beaumont 1921)........................................... 18

TO THE HONORABLE UNITED STATES DISTRICT:

ICITY CONDO, INC. and ISAAC W. KYLE (hereinafter "ICity" and "Kyle," respectively), file this Objection to Request and Recommendation (hereinafter "R&R") of the Honorable Marvin Isgur, United States Bankruptcy Judge, dated September 28, 2011. ECF 53.[1] Pursuant to this Court's Order of October 4, 2011, such Objections are timely filed by October 18, 2011.

## A. BACKGROUND

This case is the culmination of contentious and long-standing litigation between parties related to the development and subsequent attempted foreclosure of property located at 1447 - 1449 Heights Boulevard, in Houston, Texas. Rather than recite the facts again, the Court is referred to ICity and Kyle's factual background described at pages 4-12 of its Response and Cross-Motion for Summary Judgment. ECF 26.

The Court should note several glaring misstatements of fact in the R&R. At page 4, the R&R states that "...Heights Melrose bought the property in a foreclosure sale." In fact, the property was purchased by Rueven Bisk, Trustee for Lex Van Hessen, at the foreclosure sale. ECF 25-5. Bisk subsequently attempted to transfer the property to Heights Melrose by a Special Warranty Deed signed on July 8, 2009, to be effective August 4, 2009.[2] ECF 25-6. While this was indicated to be a Special Warranty Deed, it was in fact merely a quitclaim deed eliminating any and all warranties, whether expressed,

---

[1] For ease of reference, ICity and Kyle will refer to the documents and exhibits by reference to the EFC documents, as Judge Isgur's R&R did.

[2] The significance of this is that the transfer from Bisk to Heights Melrose of whatever interest he had in the property was effective at 12:01 a.m. on August 4, 2009, yet the purported foreclosure did not take place until 10:38 a.m. on August 4, 2009.

implied or statutory, and provides only a mere chance of title. The R&R also recites that "ICity and Kyle asserted, in the Affidavit of Lien, that Heights Venture owed $386,896.87 for the alleged services on furnishing the condominiums." R&R, p. 6. As the lien affidavit clearly demonstrates, only a portion of this was for services and none related to future services.[3] ECF 26-23. In its R&R, the Court also summarily assumes that Rueven Bisk acted as trustee for Lex Van Hessen when no evidence exists to support this. R&R, p. 6. As pointed out by ICity in its Sur-Reply, Bisk was never appointed a trustee by any written document, and thus, was not acting in the capacity of a Trustee for Van Hessen. ECF 34, pp. 5-6. At a bare minimum, a fact issue exists as to this matter. The Court also failed to recognize and consider the points brought out and the exhibits presented in the Sur-Reply filed by ICity and Kyle on August 31, 2011. R&R, p. 8; ECF 34. The background section of the R&R also refers to the Joint Pre-Trial Statement filed by the parties at pp. 8-9. Clearly, this document was not evidence presented in the summary judgments of the parties, yet the Court recites at p. 17 of its R&R that "...ICity and Kyle make no contentions regarding the purported M&M (Mechanics and Materialmen's Lien) in the Joint Pre-Trial Statement." Similarly, the R&R discusses the improperly admitted admissions of ICity in the same paragraph.[4] Since neither the Joint Pre-Trial Statement nor the Request for Admissions were evidence presented in Heights Melrose's Summary Judgment, this was improperly considered by the Court.

---

[3] Exhibit B of the Affidavit of Lien lists the material furnished and the loan secured for additional financing. All of the material was purchased prior to 2007.

[4] In the footnote at p. 17, the R&R incorrectly states that the admission was only on behalf of Kyle and not ICity. The exact opposite is true. The admissions were sent to and responded to only by ICity. The admissions should have been withdrawn in their entirety based upon ICity's Motion to Amend the Admissions found at ECF 27.

## B. SUMMARY JUDGMENT EVIDENCE

The summary judgment evidence recited in the R&R fails to refer to Exhibit A submitted with the sur-reply of ICity and Kyle. The settlement agreement sets forth the agreements between Thomas F. Noons, Heights Venture, Ltd. ("HVL"), British American Properties of Texas, Inc. ("BAPT") and ICity and Kyle. The Agreement states in part:

> "**Article 2. Assignments and Covenants**
>
> 1. (a) T. Noons, HVL and BAPT (Assignors) hereby assign and convey, without warranty, expressed or implied, to ICity or assigns ("Assignee") and J. Noons does hereby quitclaim, abandon and release unto Assignees, all of Assignors and J. Noons' rights, title, interest, claims and causes of action in or relating to: (a) Melrose Park Condominium, LLP and Heights Venture, Ltd.;
>
> (b) claims against Rueven Bisk, Darren Smith, the Mint Bank, Heights Melrose Group, LLC, a limited liability company...relating to matters which have been or could have been asserted in the case styled *Thomas F. Noons vs. Heights Melrose Group, LLC, Rueven Bisk and Darren Smith*, Cause No. 2010-811868, 165th Judicial District Court of Harris County, Texas...
>
> 3. T. Noons agrees...and Icity and Kyle shall have the complete authority and discretion to maintain, prosecute, settle, dismiss or otherwise determine the course of any suit brought against Rueven Bisk, Darren Smith, the Mint Bank, Heights Melrose Group, LLC...."

Since the response and exhibit were timely filed in reply to Heights Melrose's reply of August 24, 2011, this response and exhibit and should be considered by the court. ECF 34.

## C. SUMMARY JUDGMENT STANDARD

ICity and Kyle do not object to the discussion of the summary judgment standard in the R&R. They do, however, object to the application of the standard, as it is clear that the R&R considers the evidence in the light most favorable to Heights Melrose, when it has the burden to establish that there are no genuine issues of material fact on its claims. Heights Melrose seeks "a declaratory judgment to establish the rights of Intervenor [Heights Melrose] and its vendees and to quiet title to the property..." Alternatively, it seeks "...equitable relief against Plaintiffs [ICity and Kyle]... in the form of an order quieting title to the property... or ...for trespass to try title." ECF 17-118.

It is the burden of Heights Melrose to prove that the foreclosure by Bisk, on behalf of Van Hessen, was properly conducted and that the property was subsequently transferred to Heights Melrose. ICity and Kyle denied the allegations of Heights Melrose and filed a cross-claim seeking a declaration "...that the foreclosure sale was invalid and that any deed executed in connection with such sale is void." ECF 18-130, 131. It is Heights Melrose's burden to establish as a matter of law that the foreclosure was conducted properly.

## D. ANALYSIS

The R&R suggests that ICity does not have standing to challenge the foreclosure sale because it has no legal or equitable interest in the property, it had no right to notice of the foreclosure, Melrose Park Condominiums, LLC ("MPC") was not entitled to notice of the sale, and that Heights Melrose is entitled to summary judgment. For the further reasons set forth below, ICity and Kyle object to such recommendations.

**Standing**

In the simplest of terms, ICity and Kyle have standing to challenge the foreclosure through the assignment of all rights and claims in the settlement agreement with HVL and BAPT. As the Court notes, the mortgagor, HVL, or a party in privity of the estate with the mortgagor, has standing to contest the validity of a foreclosure sale pursuant to the mortgagor's deed of trust. *Goswami v. Metro Savings & Loan Ass'n*, 751 S.W.2d 47, 49 (Tex. 1988). HVL clearly has standing to contest the validity and ICity and Kyle were assigned all of these rights, effective March 1, 2011. Thus, these parties stand in the shoes of HVL. Notwithstanding such clear standing, ICity and Kyle are not required to even show standing.

In a case in which the foreclosure sale is void, such title may be collaterally attacked. *Reynolds v. Allstate Ins. Co.*, 629 F.2d 1111 (5th Cir. 1980). As in the *Reynolds* case, Heights Melrose alleges that ICity, Kyle and MPC have no interest in the property and that the foreclosure by Van Hessen was valid. Since Heights Melrose did not actually purchase the property at the foreclosure sale, it is attempting to validate the foreclosure done by a third party. As in the *Reynolds* case, ICity and Kyle claim that they and/or MPC did have an interest in the property because the foreclosure was void. When the terms of a deed of trust are not complied with, a sale by a trustee is void and subject to collateral attack. *Slaughter v. Qualls*, 162 S.W.2d 671, 675 (Tex. 1942). While ICity and Kyle believe that the evidence conclusively establishes their ownership interest in the property, should the Court hold otherwise, these parties nonetheless have the right to collaterally attack the foreclosure if the deed is void. ICity and Kyle have established that the

foreclosure was void due to the invalid appointment of Jason Davis as substitute trustee by a stranger to the deed on the date of appointment; however, should the court adopt the incorrect reasoning of the R&R, Judge Isgur has found the foreclosure to be void, as it did not comply with TEX. PROP. CODE, § 51.005. Thus, the same result applies and Heights Melrose never acquired title to the property.

Heights Melrose spent considerable time briefing, and the R&R gives deference to, the partnership agreements between ICity, HVL and BAPT. Neither Heights Melrose nor the court has addressed the settlement agreement and assignment between the parties. As noted, the settlement agreement specifically incorporated the findings of fact and conclusions of law in the state district court.[5] These documents clearly indicate that the parties have settled all issues between them with respect to the partnership agreement, and that HVL wrongfully withdrew from the MPC partnership prior to June 30, 2008. Further, HVL agreed that the property was owned by MPC. To the extent there may have been a mutual mistake between the parties in conveying title from HVL to MPC, this has been clarified in the settlement documents. While ICity and Kyle believe that title was conveyed to MPC through the condominium declarations and partnership agreement, if such conveyance was not made, it can be corrected pursuant to TEX. PROP. CODE, § 82.051, which states:

> "(a) A condominium may be created under this chapter only by recording a declaration executed in the same manner as a deed by all persons who have an interest in the real property that will be conveyed to unit owners and by every lessor of a lease, the expiration or

[5] The findings of fact and conclusions of law were incorporated in the settlement agreement. ECF 17-116, 117.

> termination of which will terminate the condominium or reduce it size...
>
> (c) If a recorded declaration is not properly executed, that defect may be cured by a subsequent execution conforming to subsection (a). After an execution defect is cured by authority of this subsection, the declaration is retroactively effective on the date it was first recorded."

Thus, to the extent that the condominium declarations may not have served to transfer ownership of the property from HVL to MPC, this defect can be retroactively corrected. Such correction has been done through the terms of settlement agreement.

Assuming that Heights Melrose has standing to attack the settlement agreement, which it does not and has not even argued, the court's analysis that MPC lost any interest in the property is misplaced. As ICity and Kyle pointed out in their response and sur-reply, the reversionary provisions could not be effective, as it is part of the partnership agreement itself. The court may not pick and choose portions of the agreement and decide that some apply while others do not.

According to the terms of the limited partnership agreement, the partnership does not terminate until its purpose is fulfilled. ECF 26-2, 26-3, pp. 12-13. Article 13.02 of the limited partnership agreement keeps the partnership operating indefinitely upon withdrawal by one general partner or released until all obligations are met. Further, in order to meet the partnership obligations of dissolving the partnership, the condominium units must be liquidated, which would require the winding up of the partnership business. *Id.*

The partnership agreement also provides in Article 13.03 that no dissolution of the partnership releases or relieves any of the parties to the agreement of their contractual obligations under the agreement, including the obligations in exhibit A of the agreement.

*Id.* According to the terms of the Agreement, it does not terminate until after the last unit is sold, closed and funded. As noted, the release between HVL, BAPT and ICity demonstrates that HVL withdrew from the partnership prior to June 20, 2008. Thus, the reversionary provision discussed in the R&R is ineffective. Further, the reversionary provision is an integral part of the agreement, and will apply only if HVL is not in default of the agreement and all bills have been paid. The reversionary language also violates the non-waivable duties of loyalty, care and good faith where a partner withdraws from the partnership when currently in default under the terms of the Agreement. Section 152.002 of the TEX. BUS. ORG. CODE:

> "(a) Except as provided in subsection (b), a partnership agreement governs the relations of the partners in between the partners and the partnership. To the extent that the partnership agreement does not otherwise provide, this chapter and the other partnership provisions govern the relationship of the partners in between the partners and the partnership.
>
> (b) A partnership agreement or the partners may not: ...(2) eliminate the duty of loyalty under section 152.205, except that the partners, by agreement, may identify specific types of activities or categories of activities that do not violate the duty of loyalty, if the types or categories are not manifestly unreasonable; (3) eliminate the duty of care under section 152.206, except that the partners, by agreement, may determine the standards by which the performance of the obligation is to be measured, if the standards are not manifestly unreasonable; (4) eliminate the obligations of good faith under section 152.204(b), except that the partners, by agreement, may determine the standards by which the performance of the obligation is to be measured, if the standards are not manifestly unreasonable; (5) having the power to withdraw as a partner under section 152.501(b)(1)(7) or (8), except for the requirement that notice be in writing."

Because the parties to the partnership agreement previously settled all issues between them, Noons, HVL and BAPT were dismissed from the lawsuit. As a result of this, there was no determination regarding the activity of HVL and BAPT, and none was necessary. Should the court find the reversionary provision of the partnership agreement applies to revert ownership back to HVL, then there are significant fact issues that exist with respect to the applicability of that provision. This does no more than create a circuitry of objections in which HVL's rights have been assigned to ICity and Kyle.

The court has also indicated that the "...evidence is unclear as to whether Bisk was aware of the partnership agreement." R&R, p. 16. While he did testify that he did not recall seeing the partnership agreement, Bisk was clearly on notice of its existence. ECF 26-24-27, pp. 16-17. Likewise, he was aware of the condominium declarations and his choice to not review them and see the subordination of the bank was only his choice. The existence of the declarations, properly filed, placed him on notice of their content. He is charged with knowledge of all facts appearing in the chain of title to the property. *Martin v. Cadle Co.*, 133 S.W.3d 897 (Tex.App .– Dallas 2004, pet. denied); *Westland Oil Dev. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex. 1982). Mr. Bisk's counsel reviewed the declarations and the consent of mortgage was clearly a part of it.

ICity and Kyle believe that the court's analysis of the M&M Lien is incorrect and they did argue in their sur-reply to the motion for summary judgment that the M&M Lien provided for an equitable claim to the property, these parties nonetheless have standing through the existence of a constitutional M&M Lien. A constitutional lien exits irrespective of the Texas Property Code and is "self-executing." *First Nat'l Bank in Dallas v. Whirpool*

*Corp.*, 517 S.W.2d 262, 266 (Tex. 1975). Article XVI, § 37 of the Texas Constitution provides that, "mechanics, artisans and materialmen of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor..." ICity and Kyle furnished and supplied cabinets and appliances for the property and are, thus, entitled to a constitutional lien for their value. *A&M Operating Co., Inc. v. Southcoast Supply Co., Inc.*, 182 BR 997 (E.D. Tex. 1995). This provides another basis for an equitable interest in the property and standing to contest the foreclosure.

**Notice**

ICity and Kyle object to the R&R regarding notice, as the court has misconstrued the meaning and effect of the Texas Condominium Act, the condominium declarations and the consent of mortgage contained in the declarations. As pointed out in its response and cross-motion, Section 82.060 of the TEX. PROP. CODE states that the Declarant is the owner of any units created by the declarations. MPC was the Declarant in the declarations. Further, as set forth in its sur-reply, ICity, one of the general partners of MPC, was specifically authorized by the partnership agreement to "...take and hold all real, personal and mixed property of the partnership, in the name of the partnership." ECF 34, pp. 2-3. This satisfies TEX. PROP. CODE, § 5.021, to transfer the property, as ICity was the "...conveyor's agent, authorized in writing." *Id.*

Contrary to the court's analysis in the R&R, the consent of mortgage did significantly more than simply "...consent to the creation fo a condominium regime..." R&R, p. 19. The language of the consent states that the bank "...hereby subordinates its said **mortgage**

and lien and security interests...that it's **mortgage** and liens shall hereafter be upon and against each and all of the individual units..." ECF 34, pp. 6-7 (emphasis added). Thus, MPC could not sell any individual unit without payment to the bank of a purportionate share of the mortgage represented by that unit. The condominium declarations also contain the following language:

> **LEASES, LIENS AND ENCUMBRANCES**
>
> There are no existing residential leases affecting title to the units in the Condominium other than the units being used as models by Declarant. Title to the Condominium is subject to the following liens and encumbrances:
>
> A Texas State Bank, as beneficiary of a Deed of Trust, recorded with the Official Records of Real Property of Harris County, Texas, on December 29, 2003, under County Clerk's File No. Y159443. Upon the closing of each unit, the lender will release its lien on the unit being conveyed. ECF 26 (7-17).

It is significant that the bank subordinated not just its lien, but also the mortgage. This is demonstrated by the sale of Unit 228 on September 21, 2007. ECF 26-21.[6] MPC was, therefore, obligated on the note, and the bank's lien was inferior to that of MPC. ECF 26, p. 20. To hold otherwise simply defies the purpose of the subordination language and the Texas Property Code regarding condominiums.

MPC was clearly entitled to notice of the foreclosure sale and did not receive it. On this basis, the foreclosure is void and a transfer to Heights Melrose is ineffective.

**Substitute Trustee Authority**

As further evidence of the court's failure to properly analyze the facts of this case,

---

[6] The Court should note that the seller of Unit 228 was Melrose Park Condominium, LLP. As indicated on page 3 of the Settlement Statement, Texas State Bank was paid $65,910.82 from the proceeds of this sale. Clearly, if MPC did not own the property, it could not have been the seller.

the R&R suggests that the Appointment of Substitute Trustee appointing Jason Davis as substitute trustee was dated to be effective on some future date, stating "the appointment and the deed conveying the property to Heights Melrose were post-dated to take effect on August 4, 2009," the date of the foreclosure sale. R&R, p. 20. This is completely wrong. The appointment was signed and acknowledged on July 8, 2009. ECF 34, pp. 20-21. While someone did inadvertently later place the date of July 15, 2009 as the date of recording in the space left blank on the appointment, it was neither done by nor authorized by Bisk. *Id.* The deed of trust authorizes a substitute trustee to be appointed in section 14, as follows:

> If the herein named Trustee shall die or become disqualified from acting in the execution of this trust or shall fail or refuse to execute the same when requested by Beneficiary so to do or if, for any reason, Beneficiary shall prefer to appoint a substitute trustee to act instead of the herein named Trustee, Beneficiary shall have full power to appoint, by written instrument, a substitute trustee and, if necessary, several substitute trustees in succession, who shall succeed to all the estate, rights, powers and duties of Trustee...

ECF 25-1, p. 5. The "beneficiary" in the deed of trust was Texas State Bank.[7] Thus, only the beneficiary could appoint a substitute trustee.

It is clear that at the time Bisk executed the appointment of Jason Davis, he was not the beneficiary under the terms of the deed of trust. The court concludes that Bisk post-dated the appointment of Davis and that this was ratified upon Bisk's acquisition of the note and deed of trust. R&R, p. 21. The court's conclusion is based upon an analysis of two

---

[7] As the R&R points out, Compass Bank was the successor in interest to Texas State Bank and assigned the note and deed of trust to Bisk on July 10, 2009, to be effective on receipt of payment by Compass Bank. ECF 26; ECF 26-31, p. 3, 26-32.

(2) non-published opinions in which courts held that a substitute trustee's actions before actual appointment can be ratified and affirmed by a subsequent appointment by the beneficiary. *Benser v. G.E. Capital Mort. Servs., Inc.*, 1994 WL 156245, at 4 (Tex.App. – Dallas, April 25, 1994, writ den'd); *Bernal-Bell v. Saxon Mort. Servs., Inc.*, 2010 WL 3250115, at 3 (Tex.App. – San Antonio, August 18, 2010, no pet.) In each of these cases, a substitute trustee took action by sending a Notice of Trustee Sale prior to actually being appointed by the beneficiary in the deed of trust. The beneficiary subsequently properly appointed the substitute trustee pursuant to the terms of the deed of trust, and the courts reasoned that the prior activity of the substitute trustee was thus ratified by the subsequent appointment. In the instant case, the facts are in no way analogous. What happened in this case is that the substitute trustee was appointed by a stranger to the deed of trust and he later allegedly became the beneficiary.[8] Even if it is assumed that the placement by some unknown individual of the July 15, 2009 date on the appointment served to act as a post-dating of the appointment, such appointment would have become effective at 12:01 a.m. on July 15, 2009. According to Bisk, payment by Van Hessen to Texas State Bank did not occur until July 15, 2009, and this could not have occurred prior to 12:01 a.m.[9] ECF 25-7.

As thoroughly briefed in ICity and Kyle's response and cross-motion for summary judgment, the appointment of a substitute trustee must strictly comply with the terms of the deed of trust, and failure to do so will render a foreclosure sale by such substitute trustee

---

[8] This assumes that Bisk could actually act as trustee for Van Hessen, an issue which ICity and Kyle continue to contest due to the failure of any written agreement appointing Bisk as trustee.

[9] At a minimum, as fact issue is raised as to when the transfer of funds took place to make the assignment effective.

void. Should the court adopt the analysis of the R&R, this would simply render meaningless more than 100 years of Texas jurisprudence, which requires strict compliance with the deed of trust. The Court's analysis would permit a beneficiary to simply correct any documents transferring ownership of a note and correct a prior improper appointment of a substitute trustee. A sale by a substitute trustee, not appointed by one authorized to do so under the terms of the deed of trust, is void. *Wilson v. Armstrong*, 236 S.W.2d 55, 757 (Tex.Civ.App. – Beaumont 1921). This is distinguishable from a voidable deed. *Id.* A trustee has no power to sell a debtor's property, except such as may be found in the deed of trust. *Ford v. Emrich*, 343 S.W.2d 527 (Tex.Civ.App. – Houston 1961, writ ref'd n.r.e.). Where a deed is void, no title passes from the trustee to the purchaser. *Id.* at 531. Where a trustee's power to convey never came into being, the trustee's sale and deed are absolutely void. *Slaughter*, 162 S.W. 671, 675. A purchaser at a foreclosure sale obtains only such title as the trustee has authority to convey. *Diversified, Inc. v. Walker*, 702 S.W.2d 717 (Tex.App. – Houston [1st Dist.] 1985, writ ref'd n.r.e). Where the trustee has no lawful authority to offer the property for sale, the purchaser cannot acquire title to the property. *Henke v. First Southern Properties, Inc.*, 586 S.W.2d 617, 210 (Tex.Civ.App. – Waco 1979, writ ref'd n.r.e.). Any sale conducted where a substitute trustee was not appointed in strict compliance with the deed of trust and Texas law is void as to purchasers at the sale and subsequent purchasers with notice. *Univ. Savings Ass'n v. Spring Woods Shopping Center*, 644 S.W.2d 705, 706 (Tex. 1982). Since the property in this case was transferred by Van Hessen to MPC, with full knowledge of the proceedings, no title passed to MPC. For the Court to attempt to correct this problem by suggesting that future action

by transferring the note ratifies the improper appointment is clearly erroneous and no authority supports this proposition.

The R&R also suggests that strict compliance with trustee appointment provisions is not required, citing *Ackly v. FDIC*, 981 F.Supp. 457, 461 (S.D. Tex. 1997). This case held that strict compliance with the notice requirement of a trustee appointment provision was not required where the mortgagor's had actual notice of the appointment. In the instant case, there is no suggestion that HVL or anyone else obligated on the mortgage had notice of the appointment of Jason Davis. The only notice of default and of sale was sent by Michael Smith on July 9, 2009. Thus, the conclusion that strict compliance is not required is also erroneous.

In the unlikely event that the court's reasoning regarding the appointment of Jason Davis is adopted, the foreclosure sale remains void. As the court pointed out, "ICity and Kyle are correct that the notice of sale did not comply with TEX. PROP. CODE, § 51.0075. R&R at p. 22. The court incorrectly, however, concluded that ICity and Kyle do not have standing to contest the validity of a foreclosure sale. Because ICity and Kyle clearly do have standing to contest the sale, the result remains the same under either scenario; the foreclosure sale is void.

## E. LEGAL FEES AND COSTS

As the R&R points out, a party is entitled to attorney's fees in cases involving "bad faith, vexation, wantonness, or oppression relating to the filing or maintenance of the action, in other specific circumstances." *Mercantile Nat'l Bank v. Bradford Trust Co.*, 850 F.2d 215, 218 (5th Cir. 1988). R&R, p. 23. This litigation was begun by an intervention by

Heights Melrose into state court litigation between the parties to the partnership agreement. The actions of Heights Melrose were clearly solely motivated by an attempt to cut off any rights of ICity and Kyle. Bisk has testified that the foreclosure was to remove liens, including those of ICity and Kyle. ECF 26; 24-27, pp. 15-18. Further, the bankruptcy and this adversary action were filed in an effort to avoid the state court litigation. Thus, ICity and Kyle should be entitled to recover attorney's fees in this action.

WHEREFORE, ICITY CONDO, INC. and ISAAC W. KYLE ask the Court to conduct a dae novo review of the summary judgment motions and evidence on file and enter judgment that the foreclosure sale is void, together with the other relief requested by ICity and Kyle.

Respectfully submitted,

**UNDERWOOD, JONES, SCHERRER & MALOUF, PLLC**

**WILLIAM B. UNDERWOOD, III**
State Bar No. 20390250
5177 Richmond Avenue, Suite 505
Houston, Texas 77056
(713) 552-1144 - Telephone
(713) 781-4448 - Facsimile

**ATTORNEYS FOR DEFENDANTS,**
**ICITY CONDO, INC and ISAAC W. KYLE**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been forwarded on this 18th day of October, 2011, to the following:

Randy W. Williams
Thompson & Knight, LLP
330 Clay St., Suite 3300
Houston, Texas 77002

***Via E-File***

Lewis W. Jost
Adair & Myers, PLLC
3120 Southwest Freeway, Suite 320
Houston, Texas 77098

***Via E-File***

Bernard Wm. Fischman
Attorney at Law
The Ariel House
8118 Datapoint Drive
San Antonio, Texas 78229

***Via E-File***

**WILLIAM B. UNDERWOOD, III**